832 So.2d 1132 (2002)
Bonnie D. REED
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 02-804.
Court of Appeal of Louisiana, Third Circuit.
December 11, 2002.
*1134 Anne E. Watson, Attorney at Law, Opelousas, LA, for Plaintiff/Appellee, Bonnie D. Reed.
Katherine P. Martin, Attorney at Law, Lafayette, LA, for Defendant/Appellant, State Farm Mutual Automobile Insurance Company.
Court composed of HENRY L. YELVERTON, OSWALD A. DECUIR and ELIZABETH A. PICKETT, Judges.
PICKETT, Judge.

FACTS
This suit arises from an automobile accident that occurred in Ville Platte, Louisiana, on February 27, 2001. This accident involved a 1997 Ford Taurus being driven by Bonnie Reed.
Both parties' vehicles were insured by State Farm Mutual Automobile Insurance Company (State Farm). Ms. Fontenot had a liability policy with a $10,000.00 per person liability limit. Ms. Reed had a policy which afforded $25,000.00 per person in uninsured motorist benefits. It was stipulated that Ms. Fontenot was 100% liable in the cause of the accident.
On April 27, 2001, Ms. Reed signed an authorization giving State Farm permission to obtain her medical records.
On June 22, 2001, Ms. Reed called her State Farm claims representative, Shawn Smith, and told Mr. Smith she was going to need a knee replacement and was making a claim for uninsured motorists (UM) benefits.
On July 23, 2001, Ms. Reed settled with State Farm for Ms. Fontenot's policy limits of $10,000.00.
When notified by Ms. Reed that she intended to make a UM claim, Mr. Smith contacted the State Farm representative who handled Ms. Fontenot's policy, Cedric Roy. Mr. Roy informed Mr. Smith that Ms. Reed had a four-month-old injury which did not exceed policy limits. Monica Domingue subsequently took over the handling of the UM claim. Ms. Domingue secured the records from State Farm's file involving the liability policy, which reflected medical bills totaling $3,272.32 and treatment through May 21, 2001. Ms. Domingue *1135 did not find, at that time, that any UM tender was warranted as she did not believe the claim exceeded the underlying policy limits.
Ms. Domingue further investigated the claim, requesting complete medical records from Dr. Barry Henry and Dr. Chuck Aswell. Dr. Henry's records reflected a pre-existing knee condition for which Ms. Reed had undergone surgery on her knee several months prior to the accident, with pain and mild swelling reported on December 7, 2000, a little less than three months before the accident at issue. Ms. Domingue re-evaluated the claim and, again, determined that Ms. Reed had not proven a claim which exceeded policy limits. Because Ms. Reed was claiming she needed a knee replacement because of the accident, Ms. Domingue specifically inquired of Dr. Henry as to what extent the accident had aggravated Ms. Reed's preexisting condition. Ms. Domingue had received complete medical records on July 30, 2001, one week after State Farm settled the liability issue at policy limits under Ms. Fontenot's policy. Ms. Domingue sent her inquiry to Dr. Henry on August 4, 2001.
State Farm received a reply from Dr. Henry on August 28, 2001. Dr. Henry acknowledged he had recommended a total knee replacement prior to the accident, but that Ms. Reed's condition had been aggravated by the accident. He noted the surgery would be sooner than otherwise necessary as a result of the accident.
By September 7, 2001, State Farm had Bonnie Reed's complete medical records before it reflecting treatment through July 20, 2001, total medical bills of $5,333.47, and an opinion from the treating physician that Ms. Reed's pre-existing knee condition was aggravated by the accident which accelerated the need for knee replacement surgery. At this point, Ms. Domingue increased her evaluation of Ms. Reed's claim, ranging it from $17,500 to $18,500.00. After giving State Farm a credit for the underlying $10,000.00 liability limit, she issued a tender to Ms. Reed for $7,500.00. She advised Ms. Reed that she would continue to evaluate her claim and pay accordingly as any additional documentation was received.
On October 3, 2001, Ms. Reed filed suit against State Farm alleging that State Farm acted arbitrarily and capriciously in failing to timely tender the policy limits and/or a reasonable amount under the policy as required by La.R.S. 22:658 and 22:1220. The plaintiff sought damages, attorney fees, penalties and court costs.
On November 1, 2001, Ms. Reed's attorney, by letter to Ms. Domingue, requested the policy limits of the UM policy be paid to Ms. Reed.
Ms. Reed was seen by Dr. Charles Johnson, an orthopaedic surgeon, on January 29, 2002. He also recommended a total knee replacement, and surgery was scheduled for February 25, 2002. State Farm took Ms. Reed's deposition on February 18, 2002, at which time she told State Farm the date of the scheduled surgery. State Farm had requested, but not yet received, the medical records from Dr. Johnson.
State Farm received Dr. Johnson's medical records on February 26, 2002, which reflected the January appointment and his recommendations. Dr. Johnson's deposition was taken on March 4, 2002. At the deposition, Dr. Johnson testified that the damage to Ms. Reed's knee was caused by the motor vehicle accident. Following this deposition, State Farm tendered the balance of the policy limits in the amount of *1136 $17,500.00. Although a settlement offer was made, Ms. Reed rejected it because it did not include attorney fees and penalties.
State Farm issued its check on April 3, 2002, in the amount of $18,128.87 which included the policy limits of $17,500.00 and legal interest in the amount of $628.87.
A trial on the merits was held on May 20, 2002. Judgment was rendered in favor of the plaintiff, Bonnie Reed, and against the defendant, State Farm, awarding the plaintiff $1,800.00 in penalties with legal interest, $15,000.00 in attorney fees plus legal interest, costs of the proceeding, and a $350.00 expert witness fee assessed for Timothy Fontenot, the physical therapist. Written judgment was executed on May 22, 2002. It is from this judgment the defendant appeals.

ASSIGNMENTS OF ERROR
ASSIGNMENTS OF ERROR BY THE DEFENDANT
(1) The trial court committed manifest error in concluding that State Farm failed to make a reasonable tender within thirty days from proof of loss as the evidence established that Ms. Reed did not make satisfactory proof of a loss mandating a UM tender more than thirty days prior to September 7, 2001 nor did Ms. Reed provide any proof to State Farm that the value of Ms. Reed's claims must have exceeded $17,500.00 at that time.
(2) The trial court committed manifest error in concluding that a second UM tender was mandated more than thirty days prior to April 3, 2002 when no additional satisfactory proof of loss was submitted during that time-frame.
(3) The trial court committed manifest error in concluding that State Farm was arbitrary and capricious in failing to make a reasonable investigation where the evidence clearly showed that State Farm actively investigated the plaintiff's claims throughout the handling of this matter.
(4) The trial court committed manifest error in concluding that State Farm was arbitrary and capricious in failing to properly evaluate the claim when the evidence clearly established that Ms. Reed had sustained an aggravation of a pre-existing condition, there were numerous causation issues regarding the extent of the aggravation, which State Farm actively investigated, and tendered within thirty days of obtaining clarification of those issues.
(5) The trial court erred as a matter of law in considering evidence which was never submitted to State Farm for consideration during the handling of this matter and therefore was completely irrelevant to the determination of the sole issue regarding whether State Farm acted arbitrary and capricious in the handling of Ms. Reed's claim.
(6) The trial court's award of $15,000.00 in attorney's fees was excessive and an abuse of discretion.
(7) The trial court erred in awarding judicial interest on attorney's fees from the date of judicial demand rather than from the date of judgment.
(8) The trial court erred in allowing the testimony of Timothy Fontenot and assessing an expert witness fee in connection with his testimony insofar as Mr. Fontenot's testimony was completely irrelevant to the bad faith issues being tried.
ASSIGNMENTS OF ERROR BY THE PLAINTIFF
Plaintiff asserts the following assignments of error in her answer to this appeal:
*1137 1. Plaintiff-Appellee, Bonnie D. Reed, contends that the trial court erred in not finding that Defendant-Appellant, State Farm Mutual Automobile Insurance Company, violated both Louisiana Revised Statute 22:658 and Louisiana Revised Statute 22:1220 and therefore allocating penalties of $5,000.00 pursuant to 22:1220 (the higher amount under the statutes).
2. Plaintiff-Appellee, Bonnie D. Reed, contends that State Farm Mutual Automobile Insurance Company violated Louisiana Revised Statute 22:1220 and 22:658 on more than one occasion and Plaintiff is therefore entitled to penalties for each breach by State Farm Mutual Automobile Insurance Company.
3. Plaintiff-Appellee, Bonnie D. Reed, contends that she is entitled to an additional judgment for attorney's fees for the time expended on this Appeal lodged by State Farm Mutual Automobile Insurance Company as well as for the work done in answering the Appeal.

DISCUSSION
APPELLANT'S ASSIGNMENTS OF ERROR
In the first four assignments of error, State Farm argues the trial court committed manifest error regarding specific findings, namely: 1) that State Farm failed to make a reasonable tender within 30 days of proof of loss as Ms. Reed did not make a satisfactory proof of loss more than 30 days prior to September 7, 2001; 2) that a second UM tender was mandated more than 30 days prior to April 3, 2002; 3) that State Farm was arbitrary and capricious in failing to made a reasonable investigation; and 4) that State Farm was arbitrary and capricious in failing to properly evaluate the claim.
Generally, an appellate court may not set aside the factual findings of a trial court unless there is a finding of manifest error or it is clearly wrong. Resell v. ESCO, 549 So.2d 840 (La.1989). To reverse the determinations of a trial court, an appellate court must: 1) find from the record that a reasonable factual basis does not exist for the finding of the trial court, and 2) determine that the record establishes that the finding is clearly wrong or manifestly erroneous. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
The insured bears the burden of making "satisfactory proof of loss" before any payment is owed by an insurer. This includes proof that: 1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured, 2) he was at fault, 3) such fault gave rise to damages, and 4) the extent of such damages. Hart v. Allstate Insurance Company, 437 So.2d 823 (La.1983).
The trial court made very specific findings of fact regarding whether State Farm was arbitrary and capricious in handling this claim. The trial court found that on July 23, 2001, State Farm settled the claim against the tort-feasor's liability policy for the $10,000.00 limits. Since the parties stipulated that the other party was 100% at fault, it is apparent the appellant was aware at that time that the appellee was not at fault in the accident.
The trial court further found that at the time of the first UM tender, on September 7, 2001, State Farm had medical bills to totaling $5,333.47, Ms. Domingue had copies of all the appellee's medical records, *1138 and State Farm was aware appellee needed a total knee replacement. The trial court concluded that State Farm knew, at the time it made the $7,500.00 tender, that it was not a reasonable tender. The trial court specifically found the plaintiff had made a satisfactory proof of loss and the damages exceeded the $10,000.00 liability policy.
The trial court further determined that at no time did State Farm request an IME and that State Farm failed to take depositions of the treating physicians for over one year from the date of the accident. The appellee in fact had total knee replacement on February 25, 2002, with the cost of the surgery exceeding $30,000.00.
Although State Farm argues it had no real evidence of a causal connection until Dr. Johnson's March 4, 2002 deposition, the trial court found it had all the information necessary to properly evaluate the claim prior to July 23, 2001. We have reviewed the record and find these findings of fact to be supported by the record. We find no manifest error in the trial court's findings that State Farm was arbitrary and capricious in failing to properly evaluate the claim and that State Farm failed to make a reasonable tender in a timely manner, thus violating La.R.S. 22:658 and 22:1220.
In Assignments of Error 5 and 8, State Farm asserts the trial court erred, as a matter of law, in considering the testimony of Timothy Fontenot, the physical therapist who treated the appellee both before and after the accident, and erred in assessing an expert witness fee. The appellant argues that Fontenot did not respond to two requests they sent for his records and that his testimony was totally irrelevant as to the issues before the court-whether State Farm failed to properly investigate the claim and whether State Farm handled the claim in an arbitrary and capricious manner.
We cannot agree that Fontenot's testimony was irrelevant to the issues before the court. Fontenot, as appellee's physical therapist, had first hand and pertinent knowledge of the appellee's condition as it pertained to her knee both before and after the accident. He had vital information as to the degree to which the accident aggravated the condition-the very issue about which State Farm argues it had little information. While State Farm sent two requests to Mr. Fontenot for his records, which he did not respond to until after the UM limits had been tendered, State Farm never subpoenaed his records and never took his deposition. Because this is reasonably related to the trial court's determination as to whether the claim was properly investigated and evaluated, we find no error on the trial court's part in allowing the testimony. We further find no error in the trial court's assessment of an expert witness fee.
In Assignments of Error 6 and 7 the appellant argues the trial court's award of $15,000.00 in attorney's fees is excessive and the trial court erred in awarding interest from the date of judicial demand, rather than the date of judgment.
La.R.S. 22:658, which the trial court found the appellant to have violated, allows for the imposition of attorney fees.
Factors to be taken into consideration in determining the reasonableness of attorney fees include: 1) the ultimate result obtained; 2) the responsibility incurred; 3) the importance of the litigation; 4) amount of money involved; 5) extent and character of the work performed; 6) *1139 legal knowledge, attainment, and skill of the attorneys; 7) number of appearances made; 8) intricacies of the facts involved; 9) diligence and skill of counsel; and 10) the court's own knowledge. Rivet v. State, 96-0145 (La.9/5/96); 680 So.2d 1154.
In the present case, the attorney submitted an affidavit reflecting she had been practicing law in Louisiana since 1986, normally charges 40% on contingency cases, began representing the appellee in August of 2001, and had spent 62.9 hours on this case. We note the issues in this matter are rather straightforward and the duration of the litigation rather brief. Counsel was ultimately successful in proving a violation of La.R.S. 22:658 and in obtaining policy limits for her client on the main demand.
Considering the factors set forth in Rivet, we find while counsel is entitled to attorney fees the court abused its discretion at fixing the amount at $15,000.00. We amend the court's award to the amount of $11,000.00.
As to the issue of judicial interest, the jurisprudence has established that when attorney fees are assessed under La.R.S. 22:658, interest is due from the date of judicial demand. Baghramain v. MFA Mutual Insurance Company, 315 So.2d 849 (La.App. 3 Cir.), writs denied, 320 So.2d 207, 209 (La.1975). We find no error on the trial court's part in ordering interest on the attorney fees from date of judicial demand.
APPELLEE'S ASSIGNMENTS OF ERROR
In her first assignment of error, the appellee argues the trial court erred by not finding State Farm violated both La. R.S. 22:658 and 22:1220. Appellee maintains she is entitled to penalties under both statues.
We previously noted the trial court made a finding of fact that State Farm had all information needed to appropriately evaluate this claim on September 7, 2001, but did not tender policy limits until after the March 4, 2002 deposition of Dr. Johnson. We have found no error in those findings of fact.
Further, we find the trial court in fact made a finding that State Farm violated both 22:658 and 22:1220. In its reasons for ruling the trial court stated (emphasis added):
This Court has no trouble finding that State Farm as plaintiff's UM carrier was arbitrary and capricious in failing to make a reasonable tender within 30 days from proof of loss, in failing to make a reasonable investigation, in failing to properly evaluate the claim, and by its actions or inactions, uh, which have violated both the letter and the spirit of the law, that is LRS 22:657 and 22:1220, and have therefore incurred liability for attorney's fees, penalties, and court costs.
The court went on to assess penalties under 22:658. The trial court's error was in not considering the penalty provisions of both statutes in assessing the penalties and attorney fees. The provisions of 22:168 and 22:1220 are closely related. This issue has been discussed fully by our supreme court in Calogero v. Safeway Ins. Co., 99-1625 (La.1/19/00); 753 So.2d 170. There the court stated:
We have previously recognized the close relationship between the conduct prohibited in La.R.S. 22:658, subd. A(1) and the conduct prohibited in La.R.S. *1140 22:1220, subd. B(5). Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184, 192, n. 14. In fact, the conduct prohibited is virtually identical, i.e., failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious or without probable cause. The primary difference is that under La.R.S. 22:658, subd. A(1), the insurer must pay the claim within 30 days of receiving satisfactory proof of loss, rather than the longer 60 day period allowed under La. R.S. 22:1220, subd. B(5).
In this case, there is no question that Safeway failed to pay the claim within 30 days after receiving satisfactory proof of loss. Further the trial judge made a factual finding that Safeway's failure to pay was arbitrary and capricious. Because he made this factual finding, the court of appeal was correct in awarding attorney fees under La.R.S. 22:658 because, unlike penalties under La. R.S. 22:1220, subd. C, penalties and attorney fees under La. R.S. 22:658, subd. B(1) are mandatory, rather than discretionary, where a breach of La. R.S. 22:658 subd. B(1) has occurred. McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, 1092, n. 6 (La.1985) (citing Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983)); Steadman v. Pearl Assurance Co., 242 La. 84, 134 So.2d 884, 888 (La.1961). This holding is not in conflict with the court of appeal's correct legal finding that where La.R.S. 22:1220 provides the greater penalty, La. R.S. 22:1220 supersedes La.R.S. 22:658 such that Calogero cannot recover penalties under both statutes. 735 So.2d at 820. However, because La.R.S. 22:1220 does not provide for attorney fees, Calogero is entitled to recover attorney fees under La. R.S. 22:658 for Safeway's arbitrary and capricious failure to pay his claim within 30 days of receiving satisfactory proof of loss.
Id. at 174
Since the penalty provision in La. R.S. 22:1220 supersedes the penalty provision in La.R.S. 22:658, and the trial court has made factual findings that State Farm violated both provisions, findings we have determined are not manifestly erroneous, the trial court should have assessed penalties under the provisions of La.R.S. 22:1220. Accordingly, we amend the judgment to reflect the appropriate penalty of $5,000.00 as provided for in La.R.S. 22:1220. Attorney fees were appropriately assessed under La.R.S. 22:658.
Appellee further argues the judgment be modified to provide multiple penalties, as she argues there are multiple breaches of La.R.S. 22:1220. The appellee argues multiple penalties are due for each occasion that the insurer violated La.R.S. 22:1220(B)(5) in arbitrarily and capriciously failing to tender policy limits. The facts of this case, taken as a whole, support the trial court's findings that State Farm was arbitrary and capricious in failing to make a reasonable tender in a timely manner and therefore violated La.R.S. 22:1220(B)(5). However, there is no proof of any other breach of La.R.S. 22:1220. Therefore, multiple penalties are not appropriate.
The appellee has requested additional attorney fees for her work on this appeal. We award her the amount of $1,500.00 in additional attorney fees.

DECREE
We find no manifest error on the part of the trial court in its findings of fact and *1141 conclusion that State Farm acted in an arbitrary and capricious manner in handling this claim. We affirm all aspects of the ruling of the trial court except as to the following: 1)we amend the trial court's award of attorney's fees from $15,000.00 to $11,000.00; 2) we find the trial court erred in assessing penalties under La.R.S. 22:658 rather than La.R.S. 22:1220 and amend the award of penalties from $1,800.00 to $5,000.00; 3) we further grant additional attorney fees in the amount of $1,500 for work done on appeal. All costs of this appeal are assessed to appellant.
AFFIRMED AS AMENDED.